# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF MISSISSIPPI
# ABERDEEN DIVISION

REGINA WILLIAMS, Individually
and on Behalf of the Wrongful Death
Beneficiaries of SAMANTHA CRUZ                                      PLAINTIFFS

V.                                                  Civil No.: 1:17-CV-00179-GHD-DAS

MISSISSIPPI DEPARTMENT OF
PUBLIC SAFETY, et. al                                                DEFENDANTS

## MEMORANDUM OPINION

Presently before this Court is Defendant Mississippi Department of Public Safety's ("MDPS") motion [21] to dismiss for lack of jurisdiction and for failure to state a claim. Having considered the matter, the Court finds that the motion should be granted.

### Factual and Procedural Background

On November 7, 2016, Defendant Mackie Sexton, a deputy with the Alcorn County Sherriff's Department attempted to serve an arrest warrant on Taylor Talley at his residence in Alcorn County. Compl. [1] ¶ 12. Talley, driving with decedent Samantha Cruz as a passenger, arrived at the house while Sexton was attempting to serve the warrant, and, after noticing Sexton, Talley sped away. *Id.* Sexton pursued. Talley was able to evade Sexton briefly, but the pursuit resumed when Talley was spotted in neighboring Tippah County. *Id.* ¶¶ 14-15. Law enforcement officials from both the Tippah County Sheriff's Department, City of Ripley Police Department, and the Mississippi Highway Patrol eventually joined the pursuit. *Id.* ¶¶ 15-16. During the chase, a trooper with the Mississippi Highway Patrol deployed spike strips in order to stop Talley's car. *Id.* ¶ 17. Talley ran over the strips, and the car left the road and struck a tree, where it burst into flames, killing Cruz. *Id.* ¶¶ 18-20.

Cruz's estate filed this action against the Mississippi Department of Public Safety, the Alcorn County Sheriff's Department, the Tippah County Sheriff's Department, the City of Ripley, and Sexton under § 1983, alleging that Defendants' use of excessive force and Defendants' failure to train officers caused Cruz's death. Plaintiffs also brought state law claims for assault and battery and negligence. MDPS filed the present motion arguing that the Eleventh Amendment bars Plaintiffs' claims against it. Plaintiffs' responded, and the matter is now ripe for review.

## 12(b)(1) Motion to Dismiss Standard

MDPS argues in its motion that under Rule 12(b)(1), Plaintiffs' claims against it should be dismissed due to sovereign immunity. "When a Rule 12(b)(1) motion is filed in conjunction with a Rule 12(b)(6) motion, . . . courts must consider the jurisdictional challenge first." *McCasland v. City of Castroville, Tex.*, 478 F. App'x 860, 860 (5th Cir. 2012) (per curiam) (citing *Wolcott v. Sebelius*, 635 F.3d 757, 762 (5th Cir. 2011); *Moran v. Kingdom of Saudi Arabia*, 27 F.3d 169, 172 (5th Cir. 1994)). This " 'prevents a court without jurisdiction from prematurely dismissing a case with prejudice.' " *Id.*

A Rule 12(b)(1) motion allows a party to challenge the Court's subject matter jurisdiction. " '[A] factual attack under Rule 12(b)(1) may occur at any stage of the proceedings, and plaintiff bears the burden of proof that jurisdiction does in fact exist.' " *Arena v. Graybar Elec. Co.*, 669 F.3d 214, 223 (5th Cir. 2012) (quoting *Menchaca v. Chrysler Credit. Corp.*, 613 F.2d 507, 511 (5th Cir. 1980) (citations omitted)).

The Fifth Circuit has instructed:

> A case is properly dismissed for lack of subject matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate the case. In considering a challenge to subject matter jurisdiction, the district court is free to weigh the evidence and resolve factual disputes in order to satisfy itself that it has the power to hear the case. Thus, under Rule 12(b)(1), the district court can

2

resolve disputed issues of fact to the extent necessary to determine jurisdiction[.]

*Smith v. Reg'l Transit Auth.*, 756 F.3d 340, 347 (5th Cir. 2014) (quotation marks and citation omitted). In ruling on a Rule 12(b)(1) motion to dismiss, the Court can consider: "(1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Tsolmon v. United States*, 841 F.3d 378, 382 (5th Cir. 2016) (internal quotation marks and citation omitted).

## Analysis

The Eleventh Amendment provides that: "The judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. CONST. amend. XI; "The Eleventh Amendment strips courts of jurisdiction over claims against a state that has not consented to suit." *Pierce v. Hearn Indep. Sch. Dist.*, 600 F. App'x 194, 197 (5th Cir. 2015) (per curiam) (citing *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100–01, 104 S. Ct. 900, 79 L. Ed. 2d 67 (1984)).

The Fifth Circuit has stated: "Eleventh Amendment immunity operates like a jurisdictional bar, depriving federal courts of the power to adjudicate suits against a state." *Union Pac. R. Co. v. La. Pub. Serv. Comm'n*, 662 F.3d 336, 340 (5th Cir. 2011) (internal citations omitted). "The Eleventh Amendment grants a State immunity from suit in federal court by citizens of other States, and by its own citizens as well." *Lapides v. Bd. of Regents*, 535 U.S. 613, 616, 122 S. Ct. 1640, 152 L. Ed. 2d 806 (2002) (citation omitted). Indeed, "[t]he amendment has been judicially construed to bar federal jurisdiction over suits brought against a state by its own citizens, despite the absence of language to that effect." *See Jagnandan v. Giles*, 538 F.2d 1166, 1177 (5th Cir.),

*cert. denied*, 432 U.S. 910, 97 S. Ct. 2959, 53 L. Ed. 2d 1083 (1977) (citations omitted). Both federal and pendent state law claims are barred from being asserted against a state in federal court. *Pennhurst State Sch. & Hosp.*, 465 U.S. at 119–21, 104 S. Ct. 900.

This immunity extends only to states themselves. *Alden v. Maine*, 527 U.S. 706, 756, 119 S. Ct. 2240, 144 L. Ed. 2d 636 (1999). Entities that are not "arms of the state" are not afforded Eleventh Amendment immunity. *Id.* The Court, then, should first determine whether MDPS is an arm of the state. If so, the Court should determine whether an exception to the Eleventh Amendment nonetheless allows the suit to proceed.

**1. The Mississippi Department of Highway Safety is an arm of the state.**

State immunity "extends to any state agency or entity deemed an 'alter ego' or 'arm' of the state." *Perez v. Region 20 Educ. Serv. Ctr.*, 307 F.3d 318, 326 (5th Cir. 2002). "This immunity also extends to state officials who are sued in their official capacities because such a suit is actually one against the state itself." *New Orleans Towing Ass'n, Inc. v. Foster*, 248 F.3d 1143, 2001 WL 185033, at *3 (5th Cir. Feb. 6, 2001); *see Hafer v. Melo*, 502 U.S. 21, 25, 112 S. Ct. 358, 116 L. Ed. 2d 301 (1991) (citing *Kentucky v. Graham*, 473 U.S. 159, 166, 105 S. Ct. 3099, 87 L. Ed. 2d 114 (1985)); *Pennhurst*, 465 U.S. at 117, 104 S. Ct. 900.

To determine whether an entity is an arm of the state, a court must analyze six factors:

> (1) whether the state statutes and case law characterize the agency as an arm of the state;
>
> (2) the source of funds for the entity;
>
> (3) the degree of local autonomy the entity enjoys;
>
> (4) whether the entity is concerned primarily with local, as opposed to statewide, problems;
>
> (5) whether the entity has authority to sue and be sued in its own name; and

(6) whether the entity has the right to hold and use property.[1]

*Williams v. Dallas Area Rapid Transit*, 242 F.3d 315, 319 (5th Cir. 2001). No single factor is dispositive. *Id*. Nor is each factor weighed equally. "The second—the source of funds—is the most important, while the fifth and sixth—whether the agency has authority to enter into litigation and hold property——are less so" *Id*. "An entity need not show that all of the factors are satisfied; the factors simply provide guidelines for courts to balance the equities and determine if the suit is really one against the state itself." *Perez v. Region 20 Educ. Serv. Ctr.*, 307 F.3d 318, 327 (5th Cir. 2002). Plaintiffs argue that under *Clark* factors, MDPS is not an arm of the state entitled to Eleventh Amendment immunity. That argument is without merit.

The federal courts of this state have consistently found MDPS to be an arm of the state of Mississippi. *See e.g., Brown v. Simpson*, No. 4:08-CV-117-WAP, 2009 WL 2449898, at *1 (N.D. Miss. Aug. 7, 2009); *Delany v. Miss. Dep't of Pub. Safety*, No. 3:12-CV-229-TSL, 2013 WL 286365, at *3 (S.D. Miss. Jan 24, 2013), *aff'd*, 554 F. App'x 279 (5th Cir. 2014); *Wamble v. Cnty of Jones*, No. 2:09-CV-103-KS, 2012 WL 2088820, at *6 (S.D. Miss. June 8, 2012); *Hawn v. Hughes*, No. 1:13-CV-36-GHD, 2014 WL 4384236, at *5 (N.D. Miss. Sept. 3, 2014). Although this Court should not consider these cases determinative, an analysis of the *Clark* factors establishes that the MDPS is still an arm of the state. *See Williams*, 242 F.3d at 319 (holding that a district court should analyze immunity under the *Clark* factors, rather than relying on other cases to determine whether agency is an arm of the state.)

Plaintiffs concede that the first and fourth factors—whether state law and case law characterize the MPDS as an arm of the state, and whether MDPS is concerned with state or local problems—weigh towards MDPS being considered an arm of the state. MDPS concedes that the

---

[1] These are called the *Clark* factors after *Clark v. Tarrant Cnty, Texas*, 798 F.2d 736 (5th Cir. 1986).

fifth factor—whether MDPS has authority to sue or be sued in its own name—weighs against that finding. Plaintiff argues the second, third, and sixth factors, weigh against MDPS such that this Court should find it is not an arm of the state.

The second factor – the source of funds for the entity – considers both whether the entity receives state funding, and whether or not money damages assessed against the entity are paid by state funds. *See Perez*, 307 F.3d at 329 (citing *Hudson v. City of New Orleans*, 174 F.3d 677, 687 (5th Cir. 1999)). While Plaintiffs concede that MDPS's operating funds are appropriated to it by the legislature, they argue that a judgment in this case would not come from state funds. "[B]ecause an important goal of the Eleventh Amendment is the protection of states' treasuries, the most significant factor in assessing an entity's status is whether a judgment against it will be paid with state funds." *McDonald v. Board of Miss. Levee Comm'rs*, 832 F.2d 901, 907 (5th Cir. 1987).

Mississippi makes use of a fund entitled the "Tort Claims Fund" to pay money judgments against claims leveled against it, including the type of claims present in the case *sub judice*. MISS. CODE ANN. § 11-46-17. The Mississippi Department of Finance and Administration places certain monies into the fund, and once placed into the fund, the monies do not lapse back into the state general fund. *Id.* § 11-46-17(1). According to Plaintiffs, because the funds placed into the Tort Claims Fund do not return to the general fund, this somehow means that funds used to pay a judgment in this case will not come from the state treasury. That argument is directly contradicted by the very first sentence of § 11-46-17: "There is hereby created *in the State Treasury* a special fund to be known as the 'Tort Claims Fund.' " (emphasis added). Plaintiffs fail to demonstrate how monies set aside by the state for the purpose of paying claims against the state do not constitute "state funds". The second factor weighs entirely in favor of finding MDPS as an arm of the state.

Plaintiffs also argue that the third factor—the degree of local autonomy—weighs against finding MDPS as an arm of the state because the commissioner of the MDPS directs the department without any oversight. "[T]he determination of an agency's autonomy requires analysis of the extent of the [entity's] independent management authority" and "the independence of the individual commissioners who govern the entity." *Vogt v. Bd. of Comm'rs of Orleans Levee Dist.*, 294 F.3d 684, 694 (5th Cir. 2002) (quotations omitted). The question is to what extent the entity is "primarily controlled by the state." *Perez*, 307 F.3d at 329-30.

There is no question that MDPS is not only primarily controlled by the state – it is entirely controlled by the state. The commissioner of the MDPS is a state employee, and is appointed by and serves at the pleasure of the Governor of Mississippi. *See* MISS. CODE ANN. § 45-1-2(1)-(3). Employees of the MDPS are state employees, with salaries set by statute. *See id.* §§ 45-1-5 & 41-5-12. Operating expenses are appropriated by the legislature, and any monies collected by the MDPS are paid into the state treasury immediately. *Id.* § 45-1-23. This factor also weighs in favor of finding MDPS as an arm of the state.

Plaintiffs finally argue that the sixth factor—whether MDPS has the authority to own property in its own name—weighs against finding MDPS as an arm of the state because MDPS is authorized to "sell any or all of its fleet of aircraft and replace the same with aircraft more suited to the needs of the department." MISS. CODE ANN. § 45-1-47. According to Plaintiffs, if the statute authorizes MDPS to sell its aircraft, then MDPS must be the owner of that aircraft, and so this factor weighs against MDPS. But as MDPS correctly points out, if MDPS held such property apart from the state, it would not need the legislature's permission to sell it. The statute further provides that, after purchasing replacement aircraft, the MDPS shall transfer the remaining funds to the state

general fund. *Id.* The MDPS would not need to return those funds to the state unless it was ultimately the state's property being sold.

In sum, the *Clark* factors overwhelmingly favor classifying MDPS as an arm of the state. Accordingly, MDPS is entitled to Eleventh Amendment immunity unless an exception applies. Having determined that MDPS is an arm of the state, the Court must next determine whether an exception applies to defeat MDPS' Eleventh Amendment immunity.

### 2. No Eleventh Amendment Exception Applies.

There are three possible exceptions to Eleventh Amendment immunity: (i) valid abrogation by Congress; (ii) waiver or consent to suit by the state; or (iii) the state's amenability to suit under the *Ex parte Young* doctrine. The Court examines each possible exception below.

*a. Abrogation*

Abrogation of Eleventh Amendment immunity applies only if Congress has unequivocally expressed its intent to abrogate a state's sovereign immunity via Section 5 of the Fourteenth Amendment. *Duncan v. Univ. of Tex. Health Sci. Ctr. at Houston*, 469 F. App'x 364, 366 (5th Cir. 2012) (per curiam) (citing *Bd. of Trs. of Univ. of Ala. v. Garrett*, 531 U.S. 356, 364, 121 S. Ct. 955, 148 L. Ed. 2d 866 (2001)). There is no evidence that Congress has intended abrogate Eleventh Amendment immunity for § 1983 claims. *See Quern v. Jordan*, 440 U.S. 332, 345, 99 S. Ct. 1139, 59 L. Ed. 2d 358 (1979). Accordingly, abrogation does not apply as an exception to Eleventh Amendment immunity on any of Plaintiffs' claims against the Defendant in the case *sub judice*.

*b. Waiver*

The second exception to Eleventh Amendment immunity provides that sovereign immunity from suit is waivable, but such waiver must be clearly stated and will not be easily implied. *Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. 261, 267, 117 S. Ct. 2028, 138 L. Ed. 2d 438 (1997); *Jagnandan*, 538 F.2d at 1117 (citing *Edelman v. Jordan*, 415 U.S. 651, 673, 94 S. Ct. 1347, 39 L.

Ed. 2d 662 (1974); *Petty v. Tenn.-Mo. Bridge Comm'n*, 359 U.S. 275, 276, 79 S. Ct. 785, 3 L. Ed. 2d 804 (1959)).

Plaintiffs argue that the Mississippi Tort Claims Act waives Eleventh Amendment immunity for § 1983 claims, as held by the Fifth Circuit in *Black v. North Panola School District*, 461 F.3d 584 (5th Cir. 2006). The Fifth Circuit made no such holding.

In *Black*, the plaintiff first brought state-law claims against the defendant school district in state court, where the claims were dismissed. *Id.* at 587-88. Afterwards, the plaintiff brought § 1983 claims against the school district in federal court. *Id.* at 588. The district court ruled those claims were barred by res judicata. *Id.*

On appeal, the plaintiff argued that Mississippi had not waived its sovereign immunity for § 1983 claims in state court. *Id.* at 592-593. Therefore, she was unable to bring those claims in the state court suit, and so they were not barred by the second, federal suit. The question before the Fifth Circuit, then, was whether Mississippi had waived its sovereign immunity with respect to § 1983 actions in state court. The Fifth Circuit then found that Mississippi had consented to such actions in state court. *Id.* at 593-95.

The Fifth Circuit did not, however, find that waiver extended to Eleventh Amendment immunity for federal court actions. This is evident because the *Black* Court proceeded to analyze whether the school district was an arm of the state, and therefore, entitled to Eleventh Amendment immunity. *Id.* at 595 ("Thus, Black's argument has merit only if NPSD is considered an arm of the state entitled to Eleventh Amendment immunity.") The *Black* Court ultimately found that the school district was not an arm of the state, and so Mississippi's Eleventh Amendment immunity, which had not been waived, did not extend to the school district. *See id.* at 596-98. As the Fifth Circuit noted, the MTCA explicitly reserves Eleventh Amendment immunity for suits in federal

courts. *Id.* at 594; MISS. CODE ANN. § 11-46-5(4). There has been no waiver of immunity for these claims.

### c. *Ex parte Young* Doctrine

The third and final exception to Eleventh Amendment immunity is a state's amenability to suit under the *Ex parte Young* doctrine. To overcome Eleventh Amendment immunity, the plaintiff must bring an action grounded in federal law for monetary relief that is "ancillary" to injunctive relief against named state officials. *Edelman*, 415 U.S. at 667–68, 94 S. Ct. 1347. *Ex parte Young* allows suit to be brought against a state officer in federal court for the purpose of enforcing the Supremacy Clause of the Constitution if the following criteria are met: (1) the plaintiff has pleaded his case against the state official responsible for enforcing the law at issue in that person's official capacity; (2) the plaintiff has alleged an ongoing violation of federal law; and (3) the plaintiff has requested the proper relief, that is, prospective, injunctive relief, or relief that is ancillary to prospective relief. *See Walker v. Livingston*, 381 F. App'x 477, 478 (5th Cir. 2010) (per curiam) (citing *Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 73, 116 S. Ct. 1114, 134 L. Ed. 2d 252 (1996)).

This doctrine does not permit Plaintiffs' claims in the case *sub judice*. Plaintiffs do not allege ongoing violations of federal law, but rather violations that have already occurred. Plaintiffs request only compensatory and punitive damages and not relief that is either prospective or ancillary to prospective relief. The *Ex parte Young* exception does not apply.

### Conclusion

The Court finds that MDPS is an arm of the state entitled to Eleventh Amendment immunity. The Court further finds that no exception to the Eleventh Amendment applies. MDPS is, therefore, immune and this Court lack's jurisdiction over Plaintiffs' claims against it. The

motion [21] to dismiss should be granted, and the Plaintiffs' claims against MDPS should be dismissed. The claims against the other defendants shall proceed.

An order in accordance with this opinion shall issue this day.

This, the  1st  day of March, 2018.

/s/ Sharion Aycock
SENIOR U.S. DISTRICT JUDGE