UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF MISSISSIPPI
ABERDEEN DIVISION

REGINA WILLIAMS, Individually and on
Behalf of the Wrongful Death Beneficiaries of
SAMANTHA CRUZ                                    PLAINTIFF

v.                                               Civil No. 1:17-cv-00179-GHD-DAS

BRYAN ANDERSON, *et. al*                         DEFENDANTS

## MEMORANDUM OPINION

Samantha Cruz died when the car in which she was a passenger struck a tree at the end of a high-speed police chase. Plaintiff Regina Williams brings this § 1983 and state law negligence action against the officers and government units involved. The Court now has before it three motions: a motion to dismiss [64] filed by Defendants Alcorn County and Mackie Sexton[1]; a motion for judgment on the pleadings [68] filed by Defendants Tippah County, Donald Austin, Josh Bateman, Karl Gailard, Billy Johnson, Jeremy Rainey, and Jonathan Stanford[2]; and a motion to dismiss [78] filed by Defendant Bryan Anderson. Williams has responded to each of these motions, and they are now ripe for review. For the reasons set forth below, the Court finds that each motion should be granted in part and denied in part.

**Factual and Procedural Background**

On November 7, 2016, Defendant Mackie Sexton, a deputy with the Alcorn County Sheriff's Department attempted to serve an arrest warrant on Taylor Talley at his residence in Alcorn County. Amended Complaint [57] ¶¶ 19-20. Talley, driving with decedent Samantha Cruz as a passenger, arrived at the house while Sexton was attempting to serve the warrant. When Talley

---

[1] The "Alcorn County Defendants".
[2] The "Tippah County Defendants".

1

spotted Sexton, he sped away. *Id.* Sexton pursued. Talley briefly evaded Sexton, but the pursuit resumed when Talley was spotted in neighboring Tippah County. *Id.* ¶ 20. Law enforcement officials from both the Tippah County Sheriff's Department, the City of Ripley Police Department, and the Mississippi Highway Patrol eventually joined the pursuit. *Id.* ¶¶ 23-25. The chase ended when Bryan Anderson, a trooper with the Mississippi Highway Patrol, deployed spike strips in order to stop Talley's car. *Id.* ¶ 26. Talley ran over the strips, and the car left the road and struck a tree, killing Cruz.[3] *Id.* ¶¶ 27-28.

Cruz's estate, through Plaintiff Regina Williams, filed this action alleging that the defendants violated Cruz's Fourth and Fourteenth Amendment rights by continuing and terminating the chase in a manner that led to her death. Williams also alleges that defendants negligently caused her death. The Alcorn County Defendants and Anderson each now move to dismiss all claims against them, arguing that the complaint fails to state a claim and they are entitled to qualified immunity.[4] The Tippah County Defendants move for a judgment on the pleadings as to the negligence claims alone.

## Legal Standards

### I. Rule 12(b)(6) Motion to Dismiss

When deciding a Rule 12(b)(6) motion to dismiss, the Court is limited to the allegations set forth in the complaint and any documents attached to the complaint. *Walker v. Webco Indus., Inc.*, 562 F. App'x 215, 216–17 (5th Cir. 2014) (citing *Kennedy v. Chase Manhattan Bank USA,*

---

[3] Talley survived the crash.

[4] The Alcorn County Defendants attached several exhibits related to the constitutional claims to their motion, and moved this Court to grant summary judgment in the alternative. The Court does not consider those exhibits in its consideration of the motion and will treat the motion solely as one to dismiss. *See McZeal v. Deutsche Bank Nat'l Tr. Co.*, 726 F. App'x 968, 971 (5th Cir. 2018) (holding that district court did not improperly convert Rule 12(b)(6) dismissal into summary judgment dismissal because the district court did not rely on matters outside the pleadings).

*NA*, 369 F.3d 833, 839 (5th Cir. 2004)). "[A plaintiff's] complaint therefore 'must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *Phillips v. City of Dallas, Tex.*, 781 F.3d 772, 775–76 (5th Cir. 2015) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009)).

A claim is facially plausible when the pleaded factual content "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678, 129 S. Ct. 1937 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)). "[P]laintiffs must allege facts that support the elements of the cause of action in order to make out a valid claim." *Webb v. Morella*, 522 F. App'x 238, 241 (5th Cir. 2013) (quoting *City of Clinton, Ark. v. Pilgrim's Pride Corp.*, 632 F.3d 148, 152–53 (5th Cir. 2010) (internal quotation marks omitted)). "[C]onclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss." *Id.* (quoting *Fernandez-Montes v. Allied Pilots Ass'n*, 987 F.2d 278, 284 (5th Cir. 1993) (internal quotation marks omitted)). "Dismissal is appropriate when the plaintiff has not alleged 'enough facts to state a claim to relief that is plausible on its face' and has failed to 'raise a right to relief above the speculative level.'" *Emesowum v. Hous. Police Dep't*, 561 F. App'x 372, 372 (5th Cir. 2014) (quoting *Twombly*, 550 U.S. at 555, 570, 127 S. Ct. 1955).

## II. Rule 12(c) Motion for Judgment on the Pleadings

After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." FED. R. CIV. P. 12(c). A Rule 12(c) motion is governed by the same standards as a Rule 12(b)(6) motion. See *Brown v. CitiMortgage, Inc.*, 472 Fed. App'x. 302, 303 (5th Cir. 2012) (per curiam) (citing *St. Paul Mercury Ins. Co. v. Williamson*, 224 F.3d 425, 440 n.8 (5th Cir. 2000)). "A motion brought pursuant to [Rule] 12(c) is designed to dispose of cases where the material facts are not in dispute and a judgment on the merits can be rendered by looking

to the substance of the pleadings and any judicially noticed facts." *Hebert Abstract Co. v. Touchstone Props., Ltd.*, 914 F.2d 74, 76 (5th Cir. 1990) (per curiam) (citing 5A CHARLES A. WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1367, at 509–10 (1990)).

## Analysis

### I. Qualified Immunity

"Qualified immunity 'gives government officials breathing room to make reasonable but mistaken judgments about open legal questions.'" *Lane v. Franks*, —— U.S. ——, 134 S. Ct. 2369, 2381, 189 L. Ed. 2d 312 (2014) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 743, 131 S. Ct. 2074, 179 L. Ed. 2d 1149 (2011)). "The doctrine of qualified immunity protects government officials from civil damages liability when their actions could reasonably have been believed to be legal." *Morgan v. Swanson*, 659 F.3d 359, 370 (5th Cir. 2011) (en banc).

Qualified immunity is an affirmative defense. However, the "plaintiff has the burden to negate the assertion of . . . immunity once properly raised." *Collier v. Montgomery*, 569 F.3d 214, 217 (5th Cir.2009). "'When a defendant invokes qualified immunity, the burden shifts to the plaintiff to demonstrate the inapplicability of the defense.'" *Beaulieu v. Lavigne*, 539 F. App'x 421, 424 (5th Cir. 2013) (quoting *Club Retro, LLC v. Hilton*, 568 F.3d 181, 194 (5th Cir. 2009)). The pleading standard for claims brought under § 1983 is heightened and the complaint must state "claims of specific conduct and actions giving rise to a constitutional violation." *Mitchell v., Okolona Sch. Dist.*, No. 1:10-CV-135-D-D, 2011 WL 1226023, at *2 (N.D. Miss. Mar. 29, 2011) (citing *Baker v. Putnal*, 75 F.3d 190, 195 (5th Cir. 1996)).

"'[A] plaintiff seeking to defeat qualified immunity must show: (1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct.'" *Da Vinci Inv., Ltd. P'ship v. Parker*, 622 F. App'x 367, 374 (5th Cir. 2015) (quoting *Morgan v. Swanson*, 659 F.3d 359, 371 (5th Cir. 2011) (en banc)). The plaintiff's

complaint must allege facts that, if true, demonstrate that the defendant violated his rights by acting in a way that he or she should have known was unlawful. *See Behrens v. Pelletier*, 516 U.S. 299, 309, 116 S. Ct. 834, 133 L. Ed. 2d 773 (1996). "Dismissal is warranted 'only if it appears that no relief could be granted under any set of facts that could be proved consistent with the allegations.'" *DeLeon v. City of Dallas, Tex.*, 141 F. App'x 258, 261 (5th Cir. 2005) (quoting *Morin v. Caire*, 77 F.3d 116, 120 (5th Cir. 1996)).

The Court turns to the first question—whether the plaintiff alleges facts that demonstrate a violation of a constitutional right. The ultimate injury that befell Cruz was that she was killed when Talley ran over the spike strips that Anderson set. A seizure occurs when there is "a governmental termination of freedom of movement *through means intentionally applied.*" *Brower v. Cty. of Inyo*, 489 U.S. 593, 597, 109 S. Ct. 1378, 1381, 103 L. Ed. 2d 628 (1989) (emphasis in original). And even when it is the driver whom police seek to seize, the passenger is seized just as much, so long as the detention is willful. *Id.* ("A seizure occurs even when an unintended person or thing is the object of the detention or taking . . . ."; *see also Brendlin v. California*, 551 U.S. 249, 254, 127 S. Ct. 2400, 168 L. Ed. 2d 132 (2007) (holding that a "traffic stop subjects a passenger, as well as the driver, to Fourth Amendment seizure.") Williams alleges that Anderson deployed the spike strip with the intent to stop the car, and that it did in fact stop the car by causing it to crash. Thus, a seizure occurred.

Though Williams makes both Fourth Amendment excessive force and Fourteenth Amendment substantive due process claims for these actions, if "a particular Amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing these claims." *Albright v. Oliver,* 510 U.S. 266, 273, 114 S.Ct. 807, 813, 127 L.Ed.2d

114 (1994) (quoting *Graham v. Connor, supra,* at 395, 109 S.Ct., at 1871) (internal quotation marks omitted). Since the "particular sort" of conduct here is the seizure of Cruz, and since the Fourth Amendment is the explicit source of protection from "unreasonable seizures", these claims must be analyzed solely under the Fourth Amendment. U.S. Const., amend. IV. Accordingly, any claims that the officers violated Cruz's substantive due process rights by causing the crash are precluded.

To succeed on an excessive force claim, the plaintiff must show "(1) an injury (2) which resulted directly and only from the use of force that was clearly excessive to the need and (3) the force used was objectively unreasonable." *Williams v. Bramer,* 180 F.3d 699, 703, *clarified,* 186 F.3d 633, 634 (5th Cir. 1999). It goes without saying that Cruz suffered an injury. The only question is whether under the facts of the complaint, Anderson's deployment of the spike strips was clearly excessive to the need to stop the car, and whether it was objectively unreasonable.

Determining whether the force used was objectively reasonable in this scenario is necessarily fact based. In *Scott v. Harris,* the Supreme Court considered whether a police officer used excessive force by ramming the plaintiff's car from behind in an attempt to end a high-speed chase. 550 U.S. 372, 127 S.Ct. 1769, 167 L.Ed.2d 686 (2007). To determine reasonableness the Court said:

> Thus, in judging whether [the officer]'s actions were reasonable, we must consider the risk of bodily harm that [the officer]'s actions posed to respondent in light of the threat to the public that [the officer] was trying to eliminate. Although there is no obvious way to quantify the risks on either side, it is clear from the videotape that respondent posed an actual and imminent threat to the lives of any pedestrians who might have been present, to other civilian motorists, and to the officers involved in the chase. It is equally clear that [the officer]'s actions posed a high likelihood of serious injury or death to respondent—though not the near *certainty* of death posed by, say, shooting a fleeing felon in the back of the head, or pulling alongside a fleeing motorist's car and shooting the motorist. So how does a

> court go about weighing the perhaps lesser probability of injuring or killing numerous bystanders against the perhaps larger probability of injuring or killing a single person? We think it appropriate in this process to take into account not only the number of lives at risk, but also their relative culpability. It was respondent, after all, who intentionally placed himself and the public in danger by unlawfully engaging in the reckless, high-speed flight that ultimately produced the choice between two evils that [the officer] confronted. Multiple police cars, with blue lights flashing and sirens blaring, had been chasing respondent for nearly 10 miles, but he ignored their warning to stop. By contrast, those who might have been harmed had [the officer] not taken the action he did were entirely innocent. We have little difficulty in concluding it was reasonable for Scott to take the action that he did.

*Id.* at 383-384 (citations omitted); *see also Plumhoff v. Rickard*, 134 S. Ct. 2012, 2020-21, 188 L. Ed. 2d 1056 (2014) (holding that officers use of deadly force was not objectively unreasonable to terminate police chase that "exceeded 100 miles per hour" and "passed more than two dozen vehicles, several of which were forced to alter course".)

Here, Williams admits that Talley was driving in the same manner as the drivers in *Scott* and *Plumhoff*. Williams alleged that the officers knew "Talley was driving at speeds of 130 mph while cutting into and out of traffic," that "Talley was driving erratically and at speeds that posed significant danger to the public," and that "Talley was proceeding through stop signs and red lights without stopping and otherwise driving erratically." Am. Compl. at ¶¶ 84, 105, 116.

Williams argues that Anderson's actions were unreasonable because the officer could have simply stopped pursuing Talley. The *Scott* Court, however, rejected that argument:

> Couldn't the innocent public equally have been protected, and the tragic accident entirely avoided, if the police had simply ceased their pursuit? We think the police need not have taken that chance and hoped for the best. Whereas [the officer]'s action—ramming respondent off the road—was *certain* to eliminate the risk that respondent posed to the public, ceasing pursuit was not. First of all, there would have been no way to convey convincingly to respondent that the chase was off, and that he was free to go. Had respondent looked in his rearview mirror and seen the police cars deactivate their flashing lights and turn around, he would have had no idea

> whether they were truly letting him get away, or simply devising a new strategy for capture. Perhaps the police knew a shortcut he didn't know, and would reappear down the road to intercept him; or perhaps they were setting up a roadblock in his path. Given such uncertainty, respondent might have been just as likely to respond by continuing to drive recklessly as by slowing down and wiping his brow.
>
> Second, we are loath to lay down a rule requiring the police to allow fleeing suspects to get away whenever they drive *so recklessly* that they put other people's lives in danger. It is obvious the perverse incentives such a rule would create: Every fleeing motorist would know that escape is within his grasp, if only he accelerates to 90 miles per hour, crosses the double-yellow line a few times, and runs a few red lights. The Constitution assuredly does not impose this invitation to impunity-earned-by-recklessness. Instead, we lay down a more sensible rule: A police officer's attempt to terminate a dangerous high-speed car chase that threatens the lives of innocent bystanders does not violate the Fourth Amendment, even when it places the fleeing motorist at risk of serious injury or death.

*Scott*, 550 U.S. at 385-386, 127 S. Ct. 1769. Simply put, it is constitutionally permissible for officers to use significant force to end a chase that "pose[s] a grave public safety risk." *Plumhoff*, 134 S. Ct. at 2022. Williams admits this chase posed such a risk, and so it was reasonable for the officers to take steps to end it. Accordingly, she fails to state claim that the officers used excessive force.

Having determined that the amended complaint fails to state that the officers involved in the chase violated Cruz's constitutional right to be free from unreasonable seizures, the Court can now turn to the motions presented.

## II. Alcorn County Defendants' and Anderson's Motions to Dismiss[5]

Williams makes the following claims against the Alcorn County Defendants:

- Fourth Amendment excessive force (count 1);
- Fourteenth Amendment substantive due process claim for depriving Cruz of her life and Cruz's family of their relationship with Cruz (count 2);

---

[5] Although the Alcorn County Defendants and Anderson each filed separate motions to dismiss, they seek dismissal on the same grounds. Therefore, the Court will address those claims together.

8

- Failure to intervene (count 3);
- Failure to train against Alcorn County itself (count 7);
- Fourteenth Amendment substantive due process claim to be from arbitrary government action against Sexton (count 8)
- Negligence (count 15)

Williams makes the following claims against Anderson:

- Fourth Amendment excessive force (count 1);
- Fourteenth Amendment substantive due process claim for depriving Cruz of her life and Cruz's family of their relationship with Cruz (count 2);
- Failure to intervene (count 3);
- A second Fourth Amendment excessive force claim (count 4);
- Fourteenth Amendment substantive due process claim to be from arbitrary government action (count 5)
- Negligence (count 15)

The Court addresses these in turn.

### a. Fourth Amendment Excessive Force Claims (Counts 1 and 4)

Williams claims that all Defendants violated Cruz's Fourth Amendment right to be free from unreasonable seizures by using excessive force to seize Cruz. The Alcorn County Defendants and Anderson each move to dismiss these claims. As discussed above, the amended complaint alleges facts that show the force used in this case was not excessive. Accordingly, Williams' excessive force claims against the Alcorn County Defendants and Anderson are dismissed.

### b. Fourteenth Amendment Claims (Count 2)

Williams claims that all Defendants violated Cruz's liberty interest in her life and Cruz's family's liberty interest in maintaining a familial relationship with Cruz in violation of the Fourteenth Amendment's substantive due process protections. As previously stated, the claim as it relates directly to Cruz is actually a Fourth Amendment seizure claim that has already been dismissed.

Turning to the claim as it relates to Cruz's family, the Supreme Court has recognized a personal right to "maintain certain human relationships" that must be free from "undue intrusion by the state." *Roberts v. U.S. Jaycees,* 468 U.S. 609, 617-618, 104 S.Ct. 3244, 3249, 82 L.Ed.2d 462 (1984). The little Fifth Circuit case law on this right in the context of police action, however, suggests that the plaintiff must allege that the "defendant intended 'to interfere with a particular relationship protected by the freedom of intimate association.'" *Molette v. City of Alexandria,* No. CIV.A. CV040501A, 2005 WL 2445432, at *5 (W.D. La. Sept. 30, 2005) (quoting *Trujillo v. Bd. Of Cnty. Com'rs,* 768 F.2d 1186 (10th Cir. 1985)); *Rivera v. City of San Antonio,* No. SA-06-CA-235-XR, 2006 WL 3340908, at *9 (W.D. Tex. Nov. 15, 2006).

Williams does not allege that any of the Defendants intended to interfere in a specific relationship Cruz had with any of her family members. Thus, she has not stated a claim for relief. And even if had Williams had made such an allegation, the Alcorn County Defendants and Anderson would still be entitled to qualified immunity because, as stated above, their actions in this case were objectively reasonable. *See Pfannstiel v. City of Marion,* 918 F.2d 1178, 1187 (5th Cir. 1990) (holding that "even an officer who subjectively intends to act unreasonably is entitled to immunity if his actions are objectively reasonable"). Accordingly, the claim fails.

    *c. Failure to intervene (Count 3)*

Williams next claims that all Defendants other than Anderson failed to stop Anderson from using excessive force against Cruz.

"[T]he Fifth Circuit has held that a plaintiff may bring a claim for failure to intervene—sometimes called bystander liability—when '[a]n officer that is present at the scene . . . does not take reasonable measures to protect a suspect from another officer's use of excessive force . . . .'" *Garrett v. Crawford,* No. SA-15-CV-261-XR, 2016 WL 843391, at *9 (W.D. Tex. Mar. 1, 2016) (quoting *Hale v. Townley,* 45 F.3d 914, 919 (5th Cir. 1995)). The plaintiff must allege that the

officer "1) knew that a fellow officer violated an individual's constitutional rights, 2) had a reasonable opportunity to prevent the harm, and 3) chose not to act." *Id.* (citing *Whitley v. Hanna,* 726 F.3d 631, 646 (5th Cir. 2013)). The plaintiff must allege more than mere presence of the officer at the scene—he or she must allege that the officer had an opportunity to both realize the force was excessive and an opportunity to intervene and stop it. *Hale,* 45 F.3d at 919.

Once again, Anderson did not use excessive force in seizing Cruz. Thus, no defendant could know that he was violating Cruz's rights because he was not violating them at all. Further, Williams does not allege that the Alcorn County Defendants were even in Anderson's presence when he laid down the spike strips, much less that they had the opportunity to stop him from doing so. This claim also fails.

### d. Fourteenth Amendment Claim against Sexton and Anderson (Counts 5 & 8)

Williams alleges that both Sexton and Anderson, individually, acted with deliberate indifference to Cruz's right to be free from arbitrary government action intended to harm in violation of the Fourteenth Amendment's Due Process Clause. The Court has already held that the Cruz's constitutional claim is appropriately analyzed under the Fourth Amendment protections from unreasonable seizures, and that no unreasonable seizure occurred. For that reason alone, the claims in these counts against Sexton and Anderson fail. Analyzing them under the Fourteenth Amendment, Williams fares no better.

Due process protects the "individual against arbitrary action of the government." *Cty. of Sacramento v. Lewis,* 523 U.S. 833, 845, 118 S. Ct. 1708, 1716, 140 L. Ed. 2d 1043 (1998) (quoting *Wolff v. McDonnell,* 418 U.S. 539, 558, 94 S. Ct. 2963, 2976 41 L. Ed. 2d. 935 (1974)). Abuse of executive power that "shocks the conscience" violates a person's substantive due process rights. *Id.* at 846-847. Conduct that "shocks the conscience" is "conduct intended to injure in some way unjustifiable by any government interest." *Id.* at 849.

11

The level of culpability for conduct to be conscience shocking depends on the context. Thus, in situations where "actual deliberation is practical," a "deliberate indifference" to plaintiff's rights may be constitutionally actionable. But if "unforeseen circumstances demand an officer's instant judgment, even precipitate recklessness fails to inch close enough to harmful purpose to spark the shock that implicates 'the large concerns of the governors and the governed.'" *Id.* at 854 (quoting *Daniels v. Williams*, 474 U.S. 327, 332, 106 S.Ct. 662, 665, 88 L.Ed.2d 662 (1986)).

In *Lewis*, a police officer initiated a chase after a motorcycle who was driving at high speed. *Id.* at 386. The motorcycle tipped over, dumping the driver and a passenger on the ground. *Id.* at 387. Although the pursuing officer slammed on his brakes, he still struck the passenger, killing him. *Id.* The passenger's family brought at § 1983 action against the officer, alleging he had violated the passenger's substantive due process rights by acting with deliberate indifference to his right to life. *Id.* at 387-388.

The Supreme Court reversed, holding that a police officer does not violate the Fourteenth Amendment "by causing death through deliberate or reckless indifference to life in a high-speed automobile chase aimed at apprehending a suspected offender." *Id.* at 836. In that scenario, "only a purpose to cause harm unrelated to the legitimate object of arrest will satisfy the element of arbitrary conduct shocking to the conscious, necessary for a due process violation." *Id.*

Here the complaint does not allege facts that support the contention that Sexton or Anderson acted with intent to harm Cruz. The Court cannot "assume the truth of [a] claim that officers acted intentionally or recklessly . . . . without further allegations." *Borsage v. Miss. Bureau of Narcotics*, 796 F.3d 435, 442 (5th Cir. 2015) (citing *Iqbal*, 556 U.S. at 680-81, 129 S. Ct. 1937). The only factual allegations made against Sexton are that he attempted to serve the arrest warrant on Talley, that he pursued Talley and Cruz after they took off, and that he continued the chase.

The only factual allegation made against Anderson is that he was aware that Cruz was in the car when he decided to deploy the spike strips. Considering the admitted dangerousness of the chase to the public, the facts do not plausibly support any claim that they acted with an intent to harm Cruz, rather than to end the chase. Williams' Fourteenth Amendment claim against Sexton and Anderson fail.

   e. *Failure to Train (Count 7)*

Williams claims that Alcorn County failed to train Sexton to safely engage in police pursuits, leading to her death from the use of excessive force.

"A municipality's failure to train its police officers can without question give rise to § 1983 liability." *World Wide Street Preachers Fellowship v. Town of Columbia*, 591 F.3d 747, 756 (5th Cir. 2009) (citations omitted). To establish such a claim, the plaintiff must show that "(1) that the municipality's training procedures were inadequate, (2) that the municipality was deliberately indifferent in adopting its training policy, and (3) that the inadequate training policy directly caused the violations in question." *Zarnow v. City of Wichita Falls, Tex.*, 614 F.3d 161, 170 (5th Cir. 2010) (citing *id.*). Because no facts establish a constitutional violation occurred, Williams does not allege facts showing that any inadequate training policy caused a violation, and this claim fails.

   f. *State Law Negligence (Count 15)*

Finally, Williams alleges that all Defendants were negligent in beginning, continuing, and ending the chase.

The Mississippi Torts Claim Act provides immunity for state law claims for governmental entities and police officers for actions related to police protection "unless the employee acted in reckless disregard of the safety and well-being of any person not engaged in criminal activity at the time of the injury." Miss. Code Ann. § 11-46-9(1)(c).

13

"Reckless disregard is more than mere negligence, but less than an intentional act." *Miss. Dep't of Pub. Safety v. Durn*, 861 So.2d 990, 994 (Miss. 2003). It occurs "when the 'conduct involved evinced not only some appreciation of the unreasonable risk involved, but also a deliberate disregard of that risk and the high probability of harm involved.'" *Durn*, 861 So.2d at 995 (quoting *Maldonado v. Kelly*, 768 So.2d 906, 910–11 (Miss.2000)).

Determining whether police acted with reckless disregard in pursing a fleeing suspect requires the consideration of "(1) length of the chase; (2) type of neighborhood; (3) characteristics of the streets; (4) presence of vehicular or pedestrian traffic; (5) weather conditions and visibility; (6) seriousness of the offense for which the police are pursuing the suspect; (7) whether the officer proceeded with sirens and blue lights; (8) whether the officer had available alternatives which would lead to the apprehension of the suspect besides pursuit; (9) existence of a police policy which prohibits pursuit under the circumstances; and (10) rate of speed of the officer in comparison to the posted speed limit." *City of Jackson v. Gray*, 72 So. 3d 491, 496–97 (Miss. 2011) (citing *City of Ellisville v. Richardson*, 913 So.2d 973, 977 (Miss.2005)). "It is appropriate for trial courts to consider all ten factors, and to look at the totality of the circumstances when analyzing whether someone acted in reckless disregard." *Richardson*, 913 So.2d at 978.

The facts of the complaint establish that Cruz, as just a passenger in the car, was not engaged in any criminal activity. Considering the other facts of the complaint in light of those ten factors, the Court finds that Williams has sufficiently alleged that the Alcorn County Defendants acted with reckless disregard. Beyond just pleading the required mental state, Williams alleges that Sexton knew Talley's warrant was for violations of conditions of post-release supervision rather than a violent crime; that Sexton knew Talley's identity and address, and so, had alternative to apprehend him; that Talley was traveling over 100 miles per hour; and that the policies of the

Alcorn County Sheriff's Department prohibited the continuation of the chase in this circumstance. Am. Compl. ¶¶ 73-75, 77, 83-84. Most importantly, she alleges that the officers knew that Cruz, who was not the subject of the warrant, was in the car with Talley, and that Talley's driving was becoming more and more dangerous. *See Id.* ¶¶ 26, 85. This suggests a reckless disregard for her safety.

With respect to Anderson, Williams further alleges he knew Cruz was in the car with Talley. *Id.* ¶ 26. Because deploying the spike strips was reasonably likely to cause injury to all passengers in the car, not just Talley, she alleges facts that support an inference that Anderson acted with reckless disregard to the Cruz's well-being.

While Williams has failed to allege conduct that would establish a constitutional violation occurred, she has sufficiently alleged that the officers acted with reckless disregard to Cruz's well-being, defeating any claims of state tort immunity at this juncture. Thus, the complaint, on its face, states a claim for negligence against Alcorn County, Sexton, and Anderson.

### g. *Punitive Damages*

Lastly the Alcorn County Defendants and Anderson each move for a dismissal of Williams claims for punitive damages. Because all of the federal claims have been dismissed, any claim for punitive damages must lie in the remaining negligence claim. Miss. Code Ann. § 11-46-15(2), however, provides that "[n]o judgment against a governmental entity or its employee for any actor or omission for which immunity is waived under this chapter shall include an award for exemplary or punitive damages . . ." The Mississippi Court of Appeals has held that "no governmental body, or employee thereof, may be liable for punitive damages in any action in the courts of the State of Mississippi". *Madison v. DeSoto Cty.*, 822 So. 2d 306, 310 (Miss. Ct. App. 2002). Accordingly, any claims for punitive damages must be dismissed.

### III. Tippah County Defendants' Motion for Judgment on the Pleadings

The Tippah County Defendants seek a judgment on the pleadings for the state law negligence claims Williams makes against them.[6] Like the Alcorn County Defendants and Anderson, the Tippah County Defendants argue that the law enforcement immunity provided by Miss. Code Ann. § 11-46-9(1) precludes Williams' negligence claims.

As with her claims against the Alcorn County Defendants and Anderson, however, Williams has sufficiently pleaded that the Tippah County Defendants acted with reckless disregard. Williams alleges that the Tippah County defendants had a policy in place that advised against the chase, that they knew Talley was being arrested for a post-release supervision violation, that they knew Talley's identity and address, and so had alternative means to arrest him; that Talley was driving extremely dangerously; and that Cruz was in the car the Talley. Am. Compl. ¶¶ 92-110. Those facts support a plausible inference reckless disregard for Cruz's well-being, and therefore the complaint states a claim for negligence. Nonetheless, any claims for punitive damages arising from the negligence claim must be dismissed pursuant to Miss. Code Ann. § 11-46-15(2). Accordingly, the Tippah County Defendant's motion for judgment on the pleadings is denied in part and granted in part.

### Conclusion

Williams amended complaint does not allege facts showing that the Defendants used excessive force or acted with intent to harm Cruz in ending the chase. Thus, it does not state claim for relief under for violations of Cruz's Fourth and Fourteenth Amendment rights. The Alcorn County Defendants' and Anderson's motions to dismiss are, therefore, granted with respect to the § 1983 claims.

---

[6] The Tippah County Defendants do not seek dismissal of the constitutional claims in this motion.

16

The complaint does allege facts showing that the Defendants acted with reckless disregard to Cruz's well-being. Therefore, the complaint states a claim for negligence that is not barred by the law enforcement immunity provided the Mississippi Tort Claims Act. The Act, however, prevents any claims for punitive damages based on that negligence. All of the motions are denied with respect to the negligence claim and granted with respect to the punitive damages claim.

A separate order shall issue.

This, the 4 day of September, 2018.

/s/ Glen H. Davidson
SENIOR U.S. DISTRICT JUDGE